**Dr. Dilip K. CHAUDHURI, Plaintiff,**

v.

**STATE OF TENNESSEE; Tennessee State University; Dr. Annie Neal; Dr. George Cox; Dr. Decatur Rogers; and Dr. Chinyere Onwubiko, Defendants.**

**No. 3:91–0081.**

United States District Court, M.D. Tennessee, Nashville Division.

July 24, 1991.

Joseph H. Johnston, Nashville, Tenn., for plaintiff.

J. Andrew Hoyal, II, Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

This is an action brought by the plaintiff for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and for violation of constitutional rights under 42 U.S.C. § 1983. Plaintiff has named as defendants the State of Tennessee, Tennessee State University ("T.S.U."), Dr. Annie Neal, Vice President for Academic Affairs at T.S.U., Dr. George Cox, Interim President at T.S.U., Dr. Decatur Rogers, Dean of the Engineering School at T.S.U., and Dr. Chinyere Onwubiko, Acting Head of the Mechanical Engineering Department at T.S.U.

The defendants, through the Office of the Attorney General of the State of Tennessee, have moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and/or 12(b)(6), the plaintiff's § 1983 complaint as amended on May 8, 1991. The Court dismisses plaintiff's § 1983 claim in its entirety against defendants State of Tennessee and T.S.U. because it is barred by the Eleventh

Amendment. The Court refuses to dismiss plaintiff's § 1983 claims for compensatory damages and prospective relief against defendants Neal, Cox, Rogers, and Onwubiko. The Court does, however, dismiss all claims for money damages relating to incidents occurring before January 31, 1990, because these claims are barred by the applicable statute of limitations.

## I.

Count One of the plaintiff's amended complaint alleges that the plaintiff was denied promotion to Dean of the Engineering School and promotion to Head of the Mechanical Engineering Department based upon his race (Asian American) and religion (Hindu), in violation of Title VII. This allegation is not at issue in defendants' current motion.

Count Two alleges that the defendants violated the free exercise clause and the establishment clause of the First Amendment to the United States Constitution. Specifically, the amended complaint alleges that, beginning in February of 1988, the plaintiff began to complain to T.S.U. officials about the apparent increase in Christian evangelism among faculty and administrators at T.S.U., including the practice by defendant Dr. Onwubiko of holding Bible classes at the Engineering School. Paragraph 34 complains that Christian prayers were offered at the following functions: May 7, 1988 graduation; August 22, 1988 faculty meeting; February 18, 1990 Engineers' Week; May 5, 1990 graduation; and September 12, 1990 Fall Convocation. Paragraph 35 alleges that all T.S.U. faculty members are required to attend these functions; that attendance is monitored by the T.S.U. administration; and that sanctions have been threatened against faculty members who have not attended these functions. Paragraph 36 alleges that defendants Neal, Cox, Rogers, and Onwubiko have at various times either initiated or encouraged such religious activities and/or approved or ratified such religious activities as a recognized part of T.S.U.'s official program.

Paragraph 37 alleges that the promotion of Christian religious beliefs through public prayer by a state institution violates the establishment clause of the First Amendment. Paragraph 38 alleges that requiring non-Christian faculty and students to attend these official functions violates the free exercise clause of the First Amendment.

The plaintiff seeks the following relief in his § 1983 cause of action:

(1) a declaratory judgment against the defendants State of Tennessee, T.S.U., Dr. Neal, Dr. Cox, Dr. Rogers, and Dr. Onwubiko that Christian-related services promoted at T.S.U. violate the Establishment Clause of the First Amendment;

(2) a declaratory judgment against defendants State of Tennessee, T.S.U., Dr. Neal, Dr. Cox, Dr. Rogers, and Dr. Onwubiko in their official capacities that Christian religious services promoted at T.S.U. deprive Plaintiff of his civil rights under color of law under 42 U.S.C. § 1983 by violating the Free Exercise Clause of the First Amendment;

(3) a preliminary and permanent injunction against the State of Tennessee, T.S.U., and the individual defendants (in their individual and official capacities) to enjoin further religious services on T.S.U. campus as a part of any official T.S.U. functions that must be attended by faculty and students;

(4) an award of compensatory damages against defendants Neal, Cox, Rogers, and Onwubiko in their individual capacities for violating plaintiff's civil rights to practice his religious beliefs without governmental interference; and

(5) an award of reasonable attorney's fees and costs against all named defendants as provided by 42 U.S.C. § 1988.

As will be explained below, the plaintiff is entitled to pursue relief only against the four individual defendants.

## II.

### A.

■ The Court must dismiss plaintiff's § 1983 claim against the State of Tennes-

see and T.S.U.[1] because it is barred by the Eleventh Amendment, which prohibits suits against a state or its agencies unless the state consents to such suit or Congress expressly abrogates the state's immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Supreme Court made clear in *Will* that the State and State agencies are not "persons" under 42 U.S.C. § 1983:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity.

> \* \* \* \* \* \*

> Construing § 1983 as a remedy for "official violation of federally protected rights" does no more than confirm that the section is directed against state action "under color of" state law. It does not suggest that the State itself was a person that Congress intended to be subject to liability.

*Id.,* 491 U.S. at 66–68, 109 S.Ct. at 2309–2310, 105 L.Ed.2d at 55–56.

Because *Will* makes no distinction between suits brought against a state or state agency for monetary damages versus suits seeking prospective relief (*i.e.,* declaratory judgment or injunction), the Court hereby dismisses, in its entirety, the plaintiff's § 1983 claim against the State of Tennessee and T.S.U.

### B.

 The plaintiff's § 1983 cause of action also seeks damages and injunctive and declaratory relief against defendants Neal, Cox, Rogers, and Onwubiko. Plaintiff's amended complaint evinces his intent to sue these defendants in their *individual*

capacities for monetary relief. The defendants ask the Court to dismiss the plaintiff's claim for monetary relief. For the reasons detailed below, the Court will not dismiss this claim.

The Supreme Court in *Will* recognized the validity of a cause of action for *prospective* relief against a state official in his or her official capacity:

> Of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham,* 473 U.S. [159] 167, n. 14 [105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114] ... This distinction is "commonplace in sovereign immunity doctrine," [citation omitted], and would not have been foreign to the 19th–century Congress that enacted § 1983....

*Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2311, n. 10, 105 L.Ed.2d at 58 n. 10. Therefore, the plaintiff's cause of action against the individual defendants in their official capacities for prospective relief is valid.

However, defendants take issue with the plaintiff's attempt to state a claim against them individually for monetary damages while suing them in their official capacities for prospective relief. According to defendants, this attempt at technically precise pleading[2] is insufficient to defeat their motion to dismiss.

Defendants rely on two Sixth Circuit opinions which suggest that, in construing § 1983 pleadings, the Sixth Circuit focuses on the capacity in which the individual defendants *acted* rather than the capacity in which they were sued:

> Although the complaint filed by [plaintiff] alleges at one point that the individual defendants were acting both "in their official and personal capacities," the

---

1. Tennessee State University is part of the State University and Community College System which is governed by a Board of Regents. Tenn.Code Ann. §§ 49–8–101; 49–8–801.

2. *See Wells v. Brown,* 891 F.2d 591 (6th Cir. 1989) (holding pro se prisoners seeking damages under § 1983 are required to clearly set forth in their pleadings that they are suing state defendants in their individual capacities for damages, not simply in their capacities as state officials).

record does not suggest in any way that the defendants' actions were somehow unofficial. The capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued; congressional intent is not to be circumvented, *Will* says, "by a mere pleading device."

*Rice v. Ohio Dep't of Transportation,* 887 F.2d 716, 719 (6th Cir.1989), *vacated on other grounds,* —— U.S. ——, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990); *see also Cowan v. University of Louisville School of Medicine,* 900 F.2d 936, 942 (6th Cir.1990) (Guy, J.) (reiterating the Sixth Circuit's "unwillingness to allow a plaintiff to circumvent Congress' intent that states not be sued under 42 U.S.C. § 1983 'by a mere pleading device.' "); *cf. Cowan,* 900 F.2d at 943 (Wellford, J., concurring):

> I find no necessity ... to adopt the statement quoted from *Rice* ... which may interpreted to mean that the doctrine of *Will* ... somehow bars suits under § 1983 against state officials when those officials are being sued in their individual capacities. I do not view *Will* as barring § 1983 suits against state officials whenever the suits concern *actions* taken in their official capacities. Instead, I believe that *Will* bars suits against state officials only when those officials are *sued* in their official capacities. (emphasis in original).

Defendants, arguing that nothing in plaintiff's pleadings suggests in any way that the actions of defendants Cox, Neal, Rogers, and Onwubiko were somehow "unofficial," ask this Court to disallow the claim for monetary relief against them.

The defendants' argument does not hold up under closer scrutiny. *Even if* the defendants' actions were wholly "official," the plaintiff still may seek compensation from them individually for allegedly violating his rights under color of state law. The Court agrees with Judge Wellford's concurrence in *Cowan.* The plaintiff has sued the four defendants in their individual capacities as state actors. The mere fact that their allegedly unconstitutional actions were conducted "on the job" does not automatically shield them from personal liability.

The decision to proceed against a person in his individual capacity is far more than a mere pleading device. It states an intention to seek recovery from an individual defendant's personal assets, not from the public fisc. It also identifies the defendant official as the real party in interest, relieves the state of any obligation to defend the claim, opens up the possibility of punitive damages, and entails personal, rather than sovereign, immunity defenses. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). This Court firmly believes that the demonstrated intent of the plaintiff, not the actions underlying the complaint, determines the nature of a particular suit under § 1983. *See Bender v. Williamsport Area School District,* 475 U.S. 534, 543, 106 S.Ct. 1326, 1332, 89 L.Ed.2d 501 (1986) (holding that there was nothing in the record "to support the suggestion that *relief was sought* against [the officials] in [their] *individual* capacity.") (first emphasis supplied, second emphasis in original); *Brandon v. Holt,* 469 U.S. 464, 468–71, 105 S.Ct. 873, 876–78, 83 L.Ed.2d 878 (1985) (analysis rested upon capacity in which defendant was named in pleading and held liable by Court, not upon actions underlying the complaint).

Considering the actions underlying the complaint, rather than the demonstrated intent of the plaintiff, to determine the nature of the suit unduly restricts the scope of § 1983. In the first place, determining the nature of the claim based upon the underlying facts conflicts squarely with the "under color of law" requirement. Secondly, it conceivably enables the states to immunize their employees from § 1983 claims for money damages. Thirdly, if the teachings of *Ex Parte Young* and *Scheuer v. Rhodes* continue to have any vitality, a state *official* is subject to suit in his personal capacity whenever he deprives a person of a federally protected right in the performance of his duties. *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714; *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686–87,

40 L.Ed.2d 90 (1974). Therefore, inquiring into the actions underlying the complaint to determine the nature of the suit begs the question of whether the actions complained of amount to a deprivation of a federally protected right.

This Court is convinced that the Supreme Court in *Will* did not intend the results reached by the Sixth Circuit in *Rice* and *Cowan*. In *Will* the Supreme Court was presented squarely with the question of who is a "person" under § 1983. The Supreme Court answered the question by holding that states are not "persons," and that state officials are not liable as "persons" in their official capacities because an official capacity suit "is no different from a suit against the State itself." *Will*, 109 S.Ct. at 2311. *Will* did not consider, however, whether § 1983 might subject state officials to personal liability for using their positions to deprive others of federally protected rights. The Supreme Court seems to have taken for granted that "person" includes an individual who worked for a state. *See Monroe v. Pape*, 365 U.S. 167, 181–85, 81 S.Ct. 473, 480–83, 5 L.Ed.2d 492 (1961); *Edelman v. Jordan*, 415 U.S. 651, 675–76, 94 S.Ct. 1347, 1361–62, 39 L.Ed.2d 662 (1974); *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (holding that damages could be an appropriate remedy "notwithstanding the fact that [the defendants] hold public office."); *Monell v. Dep't of Social Services*, 436 U.S. 658, 682, 98 S.Ct. 2018, 2031, 56 L.Ed.2d 611 (1978) (§ 1983 "without question could be used to obtain a damages judgment against state or municipal *officials* who violated federal constitutional rights while acting under color of law.") (original emphasis); *Will*, 109 S.Ct. at 2310.

The decisions of the Sixth Circuit in *Rice* and *Cowan* suggest that a defendant would become a "person" for purposes of § 1983 if she stepped so outside of her job description that her actions could not reasonably be seen as "official." *See Rice*, 887 F.2d at 719 ("the record does not suggest in any way that the defendants' actions were somehow unofficial"). This suggestion, however, conflicts directly with § 1983's prerequisite that the actions of which the plaintiff complains must be taken under color of state law.

Where officials undertake to perform their official duties, they act under color of law. *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975). Indeed, before finding that a deprivation has occurred under color of law, this circuit has required a showing that defendants caused the deprivation by taking some action in their official capacity. *Jones v. Duncan*, 840 F.2d 359, 362 (6th Cir.1988). Under *Rice's* and *Cowan's* interpretation of *Will*, however, state officials are advised to argue that their actions were in fact related to their official duties and that, therefore, they are not "persons" under § 1983. This is the precise argument made by defendants in this action. Plaintiffs, on the other hand, are placed in a Catch–22, forced to argue that actions were taken in defendants' official capacities to satisfy the "under color of law" requirement, only to defeat their own claim by establishing that the defendant is not a "person" under the statute. In effect, therefore, if the majority decisions in *Cowan* and *Rice* are correct, damages generally are no longer available to plaintiffs who have suffered deprivations of their federally protected right at the hands of a state. Such a result completely drains § 1983 of any compensatory or deterrent value against the states.

The focus in *Rice* and *Cowan* on the capacity in which an individual acted has been implicitly undermined by recent Sixth Circuit opinions. Judge Guy, who authored *Cowan*, has written two opinions since *Cowan* was published that discuss the issue of individual capacity claims brought pursuant to § 1983, and contradict the *Rice* dicta. In *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 338 (6th Cir.1990), Judge Guy agreed with the Supreme Court's decision in *Scheuer*, 416 U.S. 232, 94 S.Ct. 1683, that the Eleventh Amendment presents no bar to consideration of a plaintiff's § 1983 claim against defendants in their individual capacity. Moreover, Judge Guy also penned *Walker v. Norris*, 917 F.2d 1449 (6th Cir.1990), in which he upheld a jury verdict for violation of the

Eighth Amendment and § 1983 against two correctional officers in their individual capacity. Although both *Henry* and *Walker* were decided after *Rice* and *Cowan,* Judge Guy did not raise any eleventh amendment concerns with the jury's determination that state employees were liable in their individual capacity under § 1983. *See also Blackburn v. Floyd Cty. Bd. of Educ.,* 749 F.Supp. 159, 163 (E.D.Kan.1990) (although citing *Rice* and *Cowan,* holding that plaintiff's evidence was sufficient against county official in individual capacity for deprivation of constitutional rights to defeat summary judgment motion).[3]

Because the Court has concluded that defendants Neal, Cox, Rogers, and Onwubiko clearly fall within the definition of "persons" under § 1983, and because the allegations in the amended complaint support the proposition that the defendants deprived Dr. Chaudhuri of his constitutional rights while acting under color of state law, the Court denies the motion to dismiss the plaintiff's claim for compensatory damages against these defendants.[4]

## C.

■ All defendants argue alternatively that the applicable statute of limitations for § 1983 claims—Tenn.Code Ann. § 28–3–104 (1990)—bars all claims for monetary and prospective relief based upon incidents allegedly occurring more than one year prior to the filing of this action—January 31,

1991. The plaintiff has acknowledged that he is not entitled to monetary damages for incidents occurring before January 31, 1990. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 10. The Court holds that, although plaintiff's claim for money damages against the four defendants in their individual capacities is not subject to dismissal at this stage, he may not recover for any incident occurring before January 31, 1990.[5]

■ The defendants argue the plaintiff not only is time-barred from seeking damages against them, but also is barred from seeking injunctive or declaratory relief resulting from alleged constitutional injuries occurring before January 31, 1990. The Court rejects this argument.

This Court has held that a state may be liable for a continuing violation of federal law, thereby staying the operation of the applicable statute of limitations. In *Kelley v. Metropolitan County Bd. of Educ.,* 615 F.Supp. 1139, 1153 (M.D.Tenn.1985) (Wiseman, C.J.), *rev'd on other grounds,* 836 F.2d 986 (6th Cir.1987), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988), this Court, although recognizing the general principle that the statute of limitations begins to run from the date of injury, explained that "when the injury-causing activity continues over time, unabated, that conduct is not legitimized by the passage of time.... [A]cquiescence to a continuing

---

**3.** *Cf. Eckford–EL v. Toombs,* 760 F.Supp. 1267, 1269 (W.D.Mich.1991) (following holdings of *Rice* and *Cowan* ); *Lawson v. Bouck,* 747 F.Supp. 376, 380 (W.D.Mich.1990) (applying *Rice* and *Cowan* to bar plaintiff's damage suit against three prison officials, although noting that "[i]f the question were one of first impression, this court might not conclude that *Will* intended such a drastic change in the law *sub silento.*").

**4.** The Court's determination that the plaintiff's pleadings clearly indicate his intent to seek recovery against the defendants individually is only the threshold issue. The next question is whether the facts alleged amount to a deprivation of a federally protected right. The plaintiff also has alleged constitutional deprivations sufficient to get him past the motion to dismiss. Of course, the defendants now may argue they are entitled to qualified immunity because their

actions did not violate a clearly established rule of law. This last inquiry is designed to balance concerns for overdeterrence of official action against concerns for compensating injured plaintiffs. *Cf., e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**5.** In paragraph 34 of the complaint (incorporated by reference into the amended complaint), plaintiff sets forth several dates on which Christian prayers were allegedly delivered as part of official university functions—*e.g.,* May 7, 1988 graduation; August 22, 1988 faculty meeting; November 11, 1988 dedication ceremony; and May 6, 1989 graduation.

Paragraph 32 refers to complaints plaintiff allegedly made beginning in February of 1988. Paragraph 33 alleges that in the fall of 1988 plaintiff was given a petition signed by non-Christian students at T.S.U. objecting to Christian prayer or invocation at school functions.

violation of constitutional rights does not extinguish the individual's rights."

In this case the plaintiff argues that incidents prior to January 31, 1990, in which he allegedly was forced to attend Christian prayer services, were not isolated events, but rather are evidence of an on-going University policy, practice, or custom of unconstitutional discrimination which warrants injunctive relief. Based on the continuing violation theory, the Court refuses at this early stage in the litigation to dismiss any allegations in plaintiff's amended complaint relating to the claim for prospective relief against defendants Neal, Cox, Rogers, and Onwubiko.

### III.

For the foregoing reasons, the Court DISMISSES the plaintiff's § 1983 claim in its entirety against defendants State of Tennessee and Tennessee State University. The Court DENIES defendants' motion to dismiss the plaintiff's § 1983 claims for compensatory damages and for prospective relief against defendants Neal, Cox, Rogers, and Onwubiko.